O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HELEN MORALEZ, | ) Case No. EDCV 11-155-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

_____

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (ECF Nos. 7, 8.)

[2]  As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered the opinion of the treating physician;

2. Whether the ALJ properly assessed Plaintiff's residual functional capacity ("RFC"); and

2. Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 2-3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.

# DISCUSSION

## A.    The ALJ's Findings.

The ALJ found that Plaintiff has the severe impairments of bone fractures, essential hypertension, affective mood disorder, and substance abuse in remission. (Administrative Record ("AR") at 21.)  The ALJ concluded that Plaintiff's treatment for a ventral incisional hernia was a non-severe impairment. (Id.)  She found that Plaintiff has the RFC to perform less than the full range of light work with the following limitations:  lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing or walking two hours in an eight-hour workday; sitting six hours in an eight-hour workday, with the opportunity to stand and stretch each hour for one to three minutes; occasionally climb stairs or ramps but not ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; no exposure to dangerous machinery or unprotected heights; limited to simple, repetitive tasks with no interaction with the public and only non-intense interaction with co-workers and supervisors; no work requiring hypervigilance. (Id. at 22.)

Relying on the testimony of the VE to determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base at all exertion levels, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Id. at 25, 36-38.)  Based on the testimony of the VE, the ALJ determined that Plaintiff could perform the requirements of light work as an Assembler II (Dictionary of Occupational Titles ("DOT") 739.687-030); sedentary work as Optical Assembler (DOT 713.687-030); and sedentary work as Assembler, Buttons and Notions (DOT 734.687-018).  (Id. at 25.)

/ / /

3

**B.    The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ virtually ignored a significant report from Plaintiff's treating physician, Dr. Lisa Schmid, and failed to provide specific and legitimate reasons for her implicit rejection of that report.

Specifically, on July 26, 2006, Plaintiff presented for an intake evaluation at the Riverside County Department of Mental Health, after attempting suicide on July 3, 2006, by jumping off a thirty-foot high building.  (Id. at 250.)  Plaintiff was also seen on August 9, 2006, and September 20, 2006.  Then, on October 5, 2006, Dr. Schmid signed a "Narrative Report (Adult)," consisting of a series of criteria, with items to be circled if they "apply to the case."  (Id. at 252.)  A DSM-IV[3] diagnosis of Major Depression was indicated and the following criteria were circled:  concrete and ruminative thought; moderately impaired memory; severely impaired judgment; evidence of insomnia, depression, isolation, and social withdrawal.  (Id.)  The form indicated that Plaintiff did not show an ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or adapt to new or stressful situations.  (Id.)  Although she could interact appropriately with family members and strangers, it was "unknown" whether she could interact appropriately with co-workers or supervisors.  (Id.)  Plaintiff was seen to have a pleasant attitude, and it was determined that she could manage her own funds.  (Id.)  It was indicated that she could not complete a forty-hour work week without decompensating and that her prognosis was "guarded."  (Id.)

Regarding Plaintiff's treatment at the Riverside County Department of Mental Health, the ALJ indicated the following:

The intake evaluation at Riverside County Department of Medical

---

[3]  Diagnostic and Statistical Manual of Mental Disorders - DSM-IV-TR 369 (Am. Psych. Ass'n ed., 4th ed. 2000) ("DSM-IV")

1   Health, Blaine Street Clinic, conducted on July 26, 2006 indicated that
2   the claimant was depressed.  She admitted she had pretended to fall from
3   a building when she actually had jumped in a suicide attempt.  She
4   denied any auditory or visual hallucinations and said she had no
5   homicidal or suicidal ideation.  She admitted to using methamphetamine
6   3 times a week for about a year but had stopped in June 2006.

7   (Id. at 23 (citation omitted).)  The ALJ also generally discussed whether Plaintiff's
8   mental impairment met or medically equaled a listing, finding that Plaintiff had
9   only mild restriction in activities of daily living; moderate difficulty in social
10  functioning; moderate difficulty in concentration, persistence, or pace; and only
11  one to two episodes of decompensation of extended duration.  (Id. at 21-22.)  She
12  concluded that because Plaintiff did not have at least two "marked" limitations, or
13  one "marked" limitation and "repeated" episodes of decompensation, each of
14  extended duration, the paragraph B criteria required to meet or equal a listing were
15  not satisfied.  (Id.)

16  Plaintiff claims that although the ALJ mentioned the intake evaluation from
17  the Riverside County Department of Mental Health, the ALJ completely ignored
18  the "narrative report" from Dr. Schmid, thereby implicitly rejecting the report.  (JS
19  at 4-5.)  Plaintiff claims that the ALJ's failure to state whether she accepted or
20  rejected the report, what weight she gave the report, if any, or what the specific
21  and legitimate reasons for rejecting the opinion of the treating physician, was
22  error.  (Id. at 5.)  Plaintiff argues that "it is unfair to the plaintiff for the ALJ to
23  consider medical reports and findings that are not favorable to the plaintiff, while
24  ignoring significant findings that determine that plaintiff has severe limitations . . .
25  ."  (Id.)

26  It is well-established in the Ninth Circuit that a treating physician's opinions
27  are entitled to special weight, because a treating physician is employed to cure and

28

5

1   has a greater opportunity to know and observe the patient as an individual.

2   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating

3   physician's opinion is not, however, necessarily conclusive as to either a physical

4   condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747,

5   751 (9th Cir. 1989). The weight given a treating physician's opinion depends on

6   whether it is supported by sufficient medical data and is consistent with other

7   evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating

8   physician's opinion is uncontroverted by another doctor, it may be rejected only

9   for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

10  1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating

11  physician's opinion is controverted, it may be rejected only if the ALJ makes

12  findings setting forth specific and legitimate reasons that are based on the

13  substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

14  2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

15  Cir. 1987).

16      However, the Ninth Circuit also has held that "[t]he ALJ need not accept the

17  opinion of any physician, including a treating physician, if that opinion is brief,

18  conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d

19  at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

20  1992). A treating or examining physician's opinion based on the plaintiff's own

21  complaints may be disregarded if the plaintiff's complaints have been properly

22  discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

23  1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

24  v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion

25  of the claimant's treating physician is contradicted, and the opinion of a

26  nontreating source is based on independent clinical findings that differ from those

27  of the treating physician, the opinion of the nontreating source may itself be

28

6

1   substantial evidence; it is then solely the province of the ALJ to resolve the

2   conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v.

3   Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

4       Here, the ALJ gave "considerable weight" to the January 11, 2009,

5   psychiatric consultative evaluation by Sohini P. Parikh, M.D., a board-eligible

6   psychiatrist. (AR at 23-24, 433-39.) Dr. Parikh diagnosed Plaintiff with major

7   depression and ruled out bipolar disorder, depressive type. (Id. at 437.) She noted

8   that Plaintiff's mood was depressed and that she experienced feelings of

9   hopelessness, helplessness, anhedonia, and worthlessness. (Id. at 436.) She also

10  noted that Plaintiff evidenced no delusions, hallucinations, or phobias, and was

11  not preoccupied with suicidal or homicidal ideations. (Id. at 434, 436.) Dr. Parikh

12  examined Plaintiff and reviewed the medical records relating to Plaintiff's 2006

13  suicide attempt. (Id. at 434.)

14      The ALJ also gave "great weight" to the opinions of the medical expert,

15  David Glassmire, Ph.D., a clinical psychologist. (Id. at 24.) Dr. Glassmire

16  testified at the hearing and specifically described the form signed by Dr. Schmid

17  as "a check box form that's completed generally for the purposes of disability

18  evaluation . . ." (Id. at 43.) He reviewed that form and concluded that the

19  assessment had been made right around the time of Plaintiff's suicide attempt,

20  which he classified as an episode of decompensation. (Id. at 43-44.) He noted the

21  Riverside County Department of Mental Health records generally described

22  Plaintiff as exhibiting poor compliance with her medication, but that by December

23  21, 2006, two months after Dr. Schmid's report, it was noted that Plaintiff's

24  "energy was okay, with a full range of affect, no psychotic symptoms, suicidal or

25  homicidal ideation," and, therefore, her mental status on that date was within

26  normal limits. (Id. at 44, 45-46.) Although Plaintiff had a few low Global

27  Assessment of Functioning scores around that time, Dr. Glassmire also linked

28

these scores to the episode of decompensation. (Id.) He noted that by January 31, 2007, shortly after the episode of decompensation, the treatment records stopped, until Dr. Parikh's evaluation and comments in January 2009. (Id. at 44-45.) Dr. Glassmire concluded that the record supported the severe impairments of major depressive disorder and history of methamphetamine and marijuana abuse, in full, sustained remission. (Id. at 42.) He opined that those impairments, together with the episode of decompensation, "would lead to some work based restrictions." (Id. at 43.) He suggested limiting Plaintiff to simple, repetitive tasks, no interaction with the public, and no tasks requiring hypervigilance. (Id.)

Preliminarily, the Court notes that Drs. Parikh and Glassmire, as well as the ALJ, all appear to have concurred with Dr. Schmid's diagnosis of Major Depression.[4] As a result, the ALJ did not reject Dr. Schmid's opinion in this regard. Moreover, although Plaintiff claims an onset date of June 5, 2006, her Title XVI application date was April 21, 2008, and she must show she was disabled at the time of her application. 20 C.F.R. § 416.335 (2010). Her suicide attempt occurred almost eighteen months prior to her application and, as Dr. Glassmire testified, there were no further mental health records until Dr. Parikh's report in January 2009. Thus, while this 2006 episode provides some background for Plaintiff's affective mood disorder, it does not support a finding of disability at the time of the application, especially in light of the other evidence of record.

In contrast to Dr. Schmid's October 2006 report, Dr. Parikh's evaluation and report and Dr. Glassmire's testimony were more recent in time. The Ninth Circuit has found that medical reports that are most recent are more highly probative. See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing

---

[4]   The Court notes that although the ALJ used the term "affective mood disorder," the DSM-IV characterizes Major Depressive Disorder as a mood disorder. DSM-IV 369.

1  Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)) (medical evaluations even

2  prepared several months before the hearing in a case where the claimant had a

3  worsening condition were not substantial evidence sufficient to rebut more recent

4  conclusions by a treating doctor). Thus, Dr. Schmid's 2006 check-box form, dated

5  almost eighteen months prior to the application date, is neither significant nor

6  probative. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.

7  2003) (holding that "the ALJ is not required to discuss evidence that is neither

8  significant nor probative").

9        Even if there was error, it was harmless. Curry v. Sullivan, 925 F.2d 1127,

10  1131 (9th Cir. 1990) (harmless error rule applies to review of administrative

11  decisions regarding disability). The Ninth Circuit has held that an ALJ need not

12  recite a magical "incantation" expressly rejecting a physician's opinion. Rather, a

13  reviewing court is "not deprived of [its] faculties for drawing specific and

14  legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755. As

15  such, it is proper for a reviewing court to read an ALJ's discussion of one

16  physician and draw inferences relevant to other physicians "if those inferences are

17  there to be drawn." Id. In the present case, the medical expert's testimony

18  regarding (1) Dr. Schmid's "check box form," (2) Plaintiff's July 2006 episode of

19  decompensation as reflected in the treatment notes of the Riverside County

20  Department of Mental Health, and (3) the lack of additional mental health records

21  since 2006, as well as the ALJ's giving great weight to Dr. Glassmire's opinions,

22  all lead to a proper inference that the ALJ fully considered Dr. Schmid's record,

23  even though she did not specifically discuss it. Vincent ex rel. Vincent v. Heckler,

24  739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not specifically mention every

25  piece of evidence). Moreover, as previously noted, the ALJ found that Plaintiff

26  had the severe impairment of affective mood disorder, a finding not inconsistent

27  with Dr. Schmid's diagnosis at that time.

28

1
2
3

Accordingly, the Court finds there was no error in the ALJ's failure to specifically make mention of Dr. Schmid's October 2006 report. The Court further finds that even if there was error, it was harmless.

4

**C.    The ALJ Properly Considered Plaintiff's RFC.**

5
6
7
8
9
10

Plaintiff contends that it was error for the ALJ not to include Dr. Schmid's limitations regarding Plaintiff's inability to obtain and/or sustain full-time competitive employment in the ALJ's RFC, because the limitations set forth in Dr. Schmid's report "have significant vocational ramifications because the restriction affects the plaintiff's ability to perform any daily work-related activity." (JS at 12-13.)

11
12
13
14
15
16
17
18
19
20

In determining a claimant's disability status, an ALJ has a responsibility to determine the claimant's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see also Social Security Ruling ("SSR") 96-8p. As previously discussed, an ALJ need only explain why "significant probative evidence has been rejected," and Dr. Schmid's October 2006 check-box form, completed eighteen months prior to Plaintiff's filing of her application, and shortly after a significant isolated episode of decompensation, was neither significant nor probative.

21
22
23

Accordingly, the Court finds that the ALJ's RFC determination was consistent with the other evidence of record relied on by the ALJ, particularly the reports and testimony of Dr. Parikh and Dr. Glassmire. Thus, there was no error.

24

**D.    The ALJ Posed a Complete Hypothetical to the VE.**

25
26
27
28

Plaintiff contends that the hypotheticals posed to the VE did not incorporate Dr. Schmid's findings from the October 2006 form regarding Plaintiff's inability to maintain a sustained level of concentration, sustain repetitive tasks for an

extended period, or complete a forty-hour work week without decompensating. (JS at 16-17.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist.  See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).  As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations.  Osenbrock, 240 F.3d at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

As the Court concluded above, the record evidence, including the more temporally relevant reports of Dr. Parikh and Dr. Gallsmire, did not support the more extreme limitations and conclusion of Dr. Schmid, formed shortly after the time that Plaintiff experienced an episode of decompensation.  Accordingly, the ALJ was not obligated to include those limitations in his hypothetical to the VE. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

The ALJ gave great weight to Dr. Glassmire's opinions that Plaintiff had mild restrictions in activities of daily living, moderate restrictions in maintaining

concentration, persistence, and pace, and only one or two episodes of decompensation based on the July 2006 suicide attempt, and his conclusions that Plaintiff would be limited to simple, repetitive tasks, no interaction with the public, only non-intense interactions with co-workers and supervisors, and no tasks requiring hypervigilance.  (AR at 24, 43.)  In her hypothetical to the VE, the ALJ suggested limitations to simple, repetitive tasks, no interaction with the public, only non-intense interaction with co-workers and supervisors, and no jobs requiring hypervigilance.  (Id. at 65.)  Thus, her hypothetical tracked Dr. Glassmire's restrictions.

Because the ALJ adopted Dr. Glassmire's opinions, and because the hypothetical to the VE was sufficient, the ALJ appropriately relied on the VE's testimony.  Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  In short, the Court finds that the ALJ presented a complete hypothetical question to the VE. Thus, there was no error.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: August 31, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge